W. M. GOUDY et al. Appellants, vs. E. V. MAYBERRY et al.
Appellees.

*Opinion filed February 16, 1916.*

1. COSTS—*no liability for costs exists unless created by stat-
ute.* There is no liability for costs unless it is created by statute,
and statutes authorizing the allowance and recovery of costs are
penal in their nature and are strictly construed.

2. DRAINAGE—*what condition as to costs is not contemplated
by Levee act.* The Levee act does not contemplate that the origi-
nal petitioners shall be charged with all costs of the proceeding
until it is finally determined whether the district has been legally
organized, as the provisions for costs contained in sections 5, 10
and 44 of said act apply only to specified conditions and indicate
that the legislature did not intend the petitioners to be liable for
costs in other cases.

3. SAME—*petitioners are not liable for costs and expenses in-
curred after void order of organization.* It was not intended by
the Levee act to charge the original petitioners with costs and ex-
penses incurred by the commissioners after the entry by the county
court of a void order organizing the district, but they are liable
for the costs and expenses incurred up to the time such void order
was entered.

4. SAME—*void order organizing drainage district is a nullity.*
If the petition for organizing a levee drainage district is not suf-
ficient the county court is without jurisdiction to enter an order
organizing the district, and such order being void is a nullity, and
may be ignored or disregarded by any person not estopped in some
way or precluded by his own act from disregarding it.

APPEAL from the County Court of Wayne county; the
Hon. A. D. WEBB, Judge, presiding.

THOMAS H. CREIGHTON, for appellants.

RICHARD L. BOGGS, and MILLS & FORTH, (CARROLL C.
BOGGS, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the county court
of Wayne county dismissing a petition for the organization
of the Wayne City Drainage District, in that county, and

refusing to allow certain costs, charges and fees in favor of appellants, W. M. Goudy, T. J. Hilliard and J. E. Bond, who had theretofore been named by the county court as commissioners of said district.

A somewhat full history of the attempted organization and subsequent proceedings concerning said Wayne City Drainage District is necessary in order to reach a correct conclusion as to the costs and charges here involved. In June, 1911, a petition signed by seventy-seven land owners was filed in said county court praying for the organization of the Wayne City Drainage District and the appointment of commissioners thereunder. A hearing was had on this petition the following month, the county court holding, over the objection of a number of the land owners and the attempted withdrawal of twenty-three petitioners, that the district was legally organized, and thereafter the court appointed appellants as commissioners for said district. Some thirty-four of the land owners involved objected to the organization of the district on the ground that it was illegal. Thereafter the commissioners employed an engineer and prepared plans for the drainage district. About two years after their appointment they made a report recommending a certain plan or scheme which was quite different from the original one proposed. Over objections and exceptions of many land owners the court thereafter entered an order approving the report and declaring the district duly organized. Some thirty-four land owners then sued out a writ of error from this court to review the order of the county court declaring the district duly organized. On the hearing in this court, (*Wayne City Drainage District* v. *Boggs,* 262 Ill. 338,) the judgment was reversed and the cause remanded on the ground that the petition was not sufficient to confer jurisdiction upon the county court, this court stating that "the petition must be dismissed at the cost of the petitioners." In June, 1915, the mandate of this court reversing the judgment was filed in the county court of

Wayne county and notice was served upon all the seventy-seven original petitioners for the organization of such district, including the appellees herein, that appellants, Goudy, Hilliard and Bond, who had theretofore been appointed by the court as commissioners of said district, would present their accounts for costs and expenses in the proceedings and litigation for the organization of the district in the amount of $6370.13 and ask judgment for that amount against the petitioners. The county court refused to enter an order allowing such costs and expenses in favor of Goudy, Hilliard and Bond, and this appeal is to test the question whether the said appellants were entitled to have said costs and expenses incurred by them in the proceeding and litigation for the organization of the district allowed against the original petitioners.

Counsel for appellees concede that the original petitioners should be taxed with the costs of the proceedings up to the time the county court entered the order, in July, 1911, declaring the petition sufficient to organize the district, but contend that none of the costs incurred thereafter by appellants can be charged against the original petitioners. The record· is not clear as to just what costs were incurred before said order of July, 1911, and what have been incurred since, but it is apparent from the record, in the light of the statements in the briefs, that most, if not all, of the costs here in dispute were incurred since the entry of that order. Approximately, as we gather from the record, these costs asked by appellants are $1071.26 for the services of an engineer in preparing plans for the district; approximately $1875 for services and personal expenses of the three appellants; $1200 for attorneys' fees, and something over $800 ·for money spent for day labor of men employed to help lay out the work for the proposed district. In addition to this there were various court and other costs that are not itemized, so that we cannot find the exact amount, but enough has been stated above to indicate the nature

of the greater part of the costs, charges and expenses in dispute.

Counsel on each side argue as to the equity of allowing the costs, counsel for appellants contending that in equity and good conscience, as they were not volunteers but were appointed by the county court to take charge of this work and in good faith incurred the expenses for engineer, laborers, attorney's fees and their own personal expenses, those who petitioned to have the district organized should be charged with these expenses, and not these men, who were acting, under the law, as their agents. Counsel for appellees, on the other hand, contend that, assuming this question should be settled on the ground of equity and good faith, appellees should not be charged with these expenses in favor of appellants, as the latter knew, at the time of their appointment, that twenty-three of the original petitioners had attempted to withdraw from the petition and that the court permitted six to withdraw and refused to allow the request of the other seventeen because their application was made too late; that the appellants knew at that time, by an order entered of record in the county court, that a large majority of the land owners in the proposed district were opposed to the organization and that the trial court was forcing the organization of the district against the wishes of the majority, and that appellants well knew that these land owners were going to oppose the organization of the district to the end, and should not have taken twenty-three months to report their plans and should not have obligated themselves to large expense before the question of the legal organization of the district could be decided in this court; that before incurring such expense appellants should have had the legality of said district tested in the highest court. None of these arguments or suggestions of counsel can have any weight in deciding this question, except in so far as they help to give the proper construction, on this question of

costs, to the various provisions of the Levee act, under which this district was attempted to be organized.

At common law costs were unknown. Their allowance and recovery rest entirely upon statutory provisions, and no liability for costs exists in the absence of statutory authorization. (7 R. C. L. 781; 11 Cyc. 267; 5 Ency. of Pl. & Pr. 110.) Judgments for costs resting on statutes cannot be awarded unless they have been authorized in this State by the legislature. (*Dobler* v. *Village of Warren,* 174 Ill. 92; *Smith* v. *McLaughlin,* 77 id. 596.) Under the authorities in this State even a court of chancery has no general power to award costs unless authorized by statute. (*Metropolitan Life Ins. Co.* v. *Kinsley,* 269 Ill. 529.) Unless the statute clearly gives the authority to tax costs they will not be allowed, as such statutes are penal in their nature and have always been strictly construed. *Gehrke* v. *Gehrke,* 190 Ill. 166, and cases cited.

Section 5 of the Levee act, among other things, provides: "If the court, after hearing any and all competent evidence, that may be offered before it for and against the said petition, shall find the same has not been signed as hereinbefore required, the said petition shall be dismissed at the cost of the petitioners; but if the court shall find that the petition has been signed, as heretofore provided, the court shall so find, and such finding shall be conclusive upon the land owners of such district that they have assented to and accepted the provisions of this act; and if it shall further appear to the court that the proposed drain or drains, ditch or ditches, levee or other works, is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, for agricultural, sanitary or mining purposes, the court shall so find, and appoint three competent persons as commissioners.   *   *   *   If the court shall find against the petitioners, the petition shall be dismissed at the cost of the petitioners." Section 10 reads: "If the commissioners shall find that such costs, expenses and damages

are more than equal to the benefits which may inure to the lands in general of said district, by reason of the proposed work, they shall so report, and the proceedings shall be dismissed at the cost of the petitioners." (Hurd's Stat. 1913, pp. 922, 924.) No other section of the statute refers directly to the question of costs as here involved. Until 1913 section 44 of the Levee act provided for the abandonment of a part of the work or the entire work under certain conditions, and also made provision for the payment of costs up to the entry of such an order. (*Bissell* v. *Edwards River Drainage District,* 259 Ill. 594.) In 1913 this section was radically amended. We find, however, no provisions in any of the various sections of the Levee act, as originally enacted or as since amended, that throw any positive light on the question of costs as here involved, except in so far as sections 5 and 10 herein quoted may be considered to do so.

It is argued that the legislature certainly never intended the drainage commissioners to be personally responsible for preparing the plans and specifications, when the legality of the organization of the district could not be contested until after such plans had been prepared and reported to the court. It would serve no useful purpose to refer in detail to the various provisions of the Levee act, as originally passed or as amended, under which the legality of a drainage district could be contested. It is apparent from the fact that the legislature in 1907 amended section 16 of said Levee act so that "the legal existence of said district shall not be attacked in any collateral proceeding, or any assessment of benefits, or damages, in any manner except by *quo warranto* at any time after the entry of such order organizing such districts," (Laws of 1907, p. 277,) and dropped this amendment at the next session, that the legislature clearly intended by the present law that the organization of the district could be attacked in other than *quo warranto* proceedings. The legislature, in section 5 quoted above, has

provided how costs should be taxed against the petitioners when the petition has not been signed properly or is faulty for any other reason, and by section 10 has provided specifically that the original petitioners shall be charged with the costs of the proceedings when the commissioners shall find that the costs, expenses and damages will more than equal the benefits, and has provided, under section 44 as originally enacted and as now amended, as to the costs, under certain conditions, when the work is abandoned, but has not specifically provided for a situation such as here presents itself.

Counsel for appellants argues that the legislature must have intended that the original petitioners should be charged with all costs of the proceedings until it is finally decided whether the district was legally organized. We do not so construe the statute. It has specifically provided for the payment of costs under certain conditions. Manifestly, it had those conditions particularly in mind in drafting the law which we have referred to, and we can see no reason to argue that it intended to have any of those conditions cover such a state of affairs as is here presented.

In *Merkle Drainage District* v. *Hathaway,* 260 Ill. 186, it was held, because the trial court failed to enter the order required by statute, that the court lost jurisdiction of the cause and any subsequent orders were not binding. Counsel for appellees argue that under that decision the costs that accrued in that case up to the date of the finding of the Supreme Court could not be collected from anyone. However that may be, it can readily be seen that situations may arise under the Levee act where proceedings will have to be abandoned because of failure to comply with the law and yet the original petitioners not be responsible for the costs earned and accrued at the time the proceedings must be held to be abandoned. Obviously, it was not the intention of the legislature to require the original petitioners to pay the costs of the proceedings except in those cases specifically

provided for by the statute. In our judgment the legislature intended that the original petitioners be charged with the costs only under the conditions and limitations named in the act. The statute, in providing for the entering of an order by the county court that the district was legally organized, assumed that such an order would be valid and binding and only intended that the petitioners should be charged with the costs that were incurred up to that time if the district was not legally organized.

Counsel for appellants has urged with much earnestness that this proceeding has shown that such a construction of the statute is most unreasonable and unfair to one appointed drainage commissioner under an apparently valid, but actually void, order of court, while counsel for appellees have urged with equal earnestness that it would be most unreasonable and unfair to charge the original petitioners with thousands of dollars of expenses accrued after the entering of a void order, which they had always insisted was void. We do not deem it necessary to enter into a discussion of either of those questions. Our duty is only to construe the statute as we find it, and under the settled rules of law we can reach no other conclusion but that the legislature, under the Levee act, did not intend to charge the original petitioners with such expenses and costs as are here in question, earned and accruing after the entering of a void order by the county court.

Drainage districts are creatures of the statute. In their organization every fact essential to the jurisdiction must affirmatively appear from the record. (*Wayne City Drainage District* v. *Boggs, supra; Aldridge* v. *Clear Creek Drainage District,* 253 Ill. 251; *Drummer Creek Drainage District* v. *Roth,* 244 id. 68.) To legally organize a drainage district all the conditions of the statute as to its organization must be complied with. When this case was here on the writ of error this court held that the original petition did not comply with the statute and the county court was

therefore without authority to enter an order organizing the district or to appoint appellants as commissioners. A judgment of a court entered without jurisdiction is a nullity and may be called in question by any person at any time, without resorting to an appeal or writ of error to reverse it. The judgment, being void, may be ignored or disregarded by any person not estopped in some way or precluded by his own act from disregarding it. *Aldridge* v. *Matthews,* 257 Ill. 202.

What we have already said we think sufficiently answers the argument of counsel for appellants that those appellees who signed the original petition praying for the organization of this district are now estopped to deny the authority of the county court to appoint appellants drainage commissioners and to tax costs against such original petitioners, as prayed by appellants. As we have seen, appellees always insisted that the original order holding the original petition sufficient was void, and they have done nothing since to estop them from so contending.

Whatever costs and expenses were earned and accrued up to and including the time of entering the order by the county court on July 19, 1911, holding that the original petition was sufficient to organize the district, must be charged to the original petitioners. They are not liable for any charges or costs accruing thereafter. If the Levee act as now worded may lead, in matters of this kind, to unjust and inequitable results the remedy is with the legislature. The county court, on receipt of the mandate of this court, could do nothing but enter the order as it did.

The judgment of the county court will be affirmed.

*Judgment affirmed.*